IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | Bankruptcy No. 18-20449-CMB |
| PETER M. RUBASH, | Chapter 7 |
| Debtor. |  |
| PETER M. RUBASH, |  |
|  | Adversary No. 18-2028-CMB |
| Plaintiff, |  |
| v. | Related to Doc. No. 47 |
| UNITED STATES DEPARTMENT OF EDUCATION, and DEFAULT RESOLUTIONS GROUP, |  |
| Defendants. |  |

*Appearances*:  Kathryn L. Harrison, Esq., for Plaintiff, Peter M. Rubash
Jill Locnikar, Esq., for Defendant, United States

**MEMORANDUM OPINION**

The above-captioned adversary proceeding was commenced by the Debtor, Peter M. Rubash, for the purpose of discharging student loan debt pursuant to 11 U.S.C. §523(a)(8).[1] The United States of America, on behalf of the United States Department of Education, ("United States") opposes discharge. Pending before the Court is the *United States' Motion for Summary Judgment* ("Motion for Summary Judgment," Doc. No. 47). Upon consideration of the Motion for Summary Judgment, the response thereto, the parties' respective concise statements of material

---

[1]  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment.

1

fact and responses, exhibits, and briefs, this Court finds that the United States is entitled to judgment as a matter of law, and the Motion for Summary Judgment must be granted.

## Procedural History

On February 6, 2018, Mr. Rubash filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Shortly thereafter, on February 22, 2018, he commenced this adversary proceeding seeking to discharge his student loan debt. An amended complaint was filed on July 26, 2018, and the United States filed its answer opposing discharge of the debt.

Following the conclusion of discovery, on May 10, 2019, the United States filed its Motion for Summary Judgment, *Defendant's Memorandum of Law in Support of its Motion for Summary Judgment* (Doc. No. 48), and *United States' Concise Statement of Material Facts* (Doc. No. 49), accompanied by an appendix and supporting exhibits. Mr. Rubash filed his Response to the Motion for Summary Judgment (Doc. No. 60), *Memorandum of Law of the Plaintiff in Opposition to Summary Judgment* (Doc. No. 62), and *Plaintiff's Response to United States' Concise Statement of Material Facts* (Doc. No. 61), containing Mr. Rubash's statement of additional material facts and accompanied by an appendix and supporting exhibits. After the United States submitted its response to Mr. Rubash's statement of additional facts (Doc. No. 64), the matter appeared ready for oral argument; however, as addressed at the status conference held September 11, 2019, the parties sought time to undo a post-petition consolidation of Mr. Rubash's student loan debt and discuss potential payment options for Mr. Rubash that may resolve the adversary proceeding.

Ultimately, the parties were unable to reach a resolution. At the status conference held January 29, 2020, the Court granted Mr. Rubash's request to file a supplemental brief and provided an opportunity for the United States to respond. Following the submission of the parties'

supplemental briefs (Doc. Nos. 76 & 78), oral argument was heard on March 10, 2020. The matter was taken under advisement and is now ripe for decision.

Factual Background

Mr. Rubash received a degree in Biological Science in 1982 from the University of Pittsburgh and subsequently earned his law degree from Duquesne University School of Law. *See* Doc. No. 61, at ¶¶8-9 (admitting). Mr. Rubash obtained loans in the pursuit of his own education and later for his daughter's education. *See* Exhibit 11, at 15:12-25. Over the years, in addition to making voluntary payments at times, Mr. Rubash asserts that he attempted to address the educational loan debt through consolidation, deferments, forbearance, and inquiries into monthly payment programs. *See* Doc. No. 64, at ¶¶14, 16-17 (admitting); Exhibit 11, at 15:19-21, 30:1-33:3. At this time, the balance owed is substantial.

Although Mr. Rubash did practice as an attorney upon graduation from law school, due to unfortunate circumstances, Mr. Rubash became unemployed for a period of time and eventually obtained employment outside of the legal profession. *See* Doc. No. 64, at ¶¶1, 3, 6, 9, 11 (admitting). Mr. Rubash expresses dissatisfaction with his current employment and wishes to return to the legal field to utilize his skills and training and increase his income. *See* Exhibit 11, at 18:22-19:3. Related to his employment and financial struggles, Mr. Rubash sought treatment for depression. *See* Doc. No. 64, at ¶ 12 (admitting in part); Exhibit 1. Upon evaluation of Mr. Rubash, Dr. Michael McCue expressed the opinion that Mr. Rubash's "occupational failure as lawyer and his resulting debt have caused, or at the very least, exacerbated his psychological dysfunction." *See* Exhibit 1, at 5. Dr. McCue further refers to Mr. Rubash's "underemployment" and the low likelihood of Mr. Rubash "obtaining suitable employment consistent with this [sic] education and past levels of employment." *See* Exhibit 1, at 5. Despite any hindrances to *more suitable or*

3

*favorable* employment, Mr. Rubash has nonetheless maintained employment and is able to work and function at work. *See* Doc. No. 61, at ¶¶27-29 (admitting).

For the past eighteen years, Mr. Rubash has been steadily employed in a full-time position with Allegheny County in the Department of Economic Development as a project manager. *See* Doc. No. 61, at ¶¶14-15 (admitting). In that position, Mr. Rubash earns approximately $49,000 per year, with healthcare benefits and a pension plan. *See* Doc. No. 61, at ¶16 (admitting). In addition to his employment with the County, Mr. Rubash has served in the role of "informal outside counsel" for the past ten years for Lee Industries earning $50 per hour. *See* Doc. No. 61, ¶17 (admitting). In 2017, Mr. Rubash earned approximately $10,000 from Lee Industries though his income has been closer to $5,000 a year more recently. *See* Doc. No. 61, ¶17 (admitting); Exhibit 11, at 12:1-19. Mr. Rubash's income is identified in Schedule I of his Bankruptcy Schedules and constitutes the majority of the household income. *See* Doc. No. 61, at ¶19 (admitting); Exhibit D, at 46-47; Exhibit 11, at 12:25-13:5.

Mr. Rubash is sixty years of age and resides with his wife in Churchill, Allegheny County. *See* Doc. No. 61, at ¶6 (admitting); Exhibit 11, at 5:12-13, 6:22-24. He has three adult children, none of whom live in his residence full time. *See* Doc. No. 61, at ¶7 (admitting in part); Exhibit 11, at 8:5-12. Nonetheless, as identified in his Schedule J, Mr. Rubash provides financial support for his adult children of approximately $400 per month. *See* Doc. No. 61, at ¶22 (admitting); Exhibit D, at 49. Even with this monthly contribution to his adult children, Mr. Rubash's Schedules I and J reveal that the monthly income for the Rubash household ($5,219.96) exceeds monthly expenses ($4,821.83), resulting in a positive monthly net income of $398.13. *See* Exhibit D, at 46-49.

4

The Schedules, however, do not accurately portray the current income and expenses of the household.[2] Whereas Mrs. Rubash's income was previously identified as $1,000 per month, she now earns between $800 or $900 "every couple of weeks." *See* Doc. No. 61, at ¶19 (admitting); Exhibit 11, at 25:12-19 (indicating her income could be more than $1,600 per month now).[3] In addition, the Schedules reflect a higher income from Lee Industries than Mr. Rubash has been receiving in more recent years. *See* Doc. No. 61, ¶17 (admitting); Exhibit 11, at 12:2-13:5.[4] Overall, the expenses identified are lower than previously reported. The flexible mortgage payment of $1,208 has decreased to $1,028. *See* Doc. No. 61, at ¶20 (admitting). Further, the inclusion of real estate taxes as a separate expense was in error and results in a reduction of $324.83 per month. *See* Doc. No. 61, at ¶20 (admitting). Mr. Rubash also indicated that his payment to the IRS was negotiated up to $150 from the amount of $100 listed in Schedule J. *See* Exhibit 11, at 21:17-22:4; Exhibit D, at 49. Accordingly, based upon the reported changes to income and

---

[2]    At the time they were filed, the Schedules were declared as true and correct under penalty of perjury by Mr. Rubash. *See Declaration About an Individual Debtor's Schedules*, Exhibit D, at 50. At his deposition, Mr. Rubash testified to the accuracy of the Schedules at the time they were filed but explained changes since the time of filing and an error in listing an expense. *See* Exhibit 11, at 20:5-23, 21:17-25:19, 35:7-37:23.

[3]    Notably, although not cited within either parties' statements of fact, Mr. Rubash provided additional information regarding Mrs. Rubash's income in his responses to interrogatories; specifically, he identified Mrs. Rubash's previous monthly income as averaging $1,100 per month compared to her current monthly income averaging $1,800 per month. *See* Exhibit E, ¶14. Nonetheless, as varying amounts have been provided by Mr. Rubash, the Court considers the lower amount of $1,600 per month to avoid any doubt in calculating the household income.

[4]    In Schedule I, Mr. Rubash reports monthly income from Lee Industries in the amount of $833 per month, equating to $9,996 per year. Mr. Rubash testified, however, that his annual income from Lee Industries has more recently been approximately $5,000 per year. Accordingly, the Court considers the impact of a reduction in monthly income of approximately $417 per month.

5

expenses provided by Mr. Rubash, the monthly net income of the Rubash household exceeds $1,000.[5]

Through this adversary proceeding, Mr. Rubash seeks to discharge his substantial educational loan debt, which may total in excess of $230,000.[6] A payment plan has been offered to Mr. Rubash requiring monthly payments in the amount of approximately $838. *See* Doc. No. 61, at ¶25 (admitting amount of monthly payment plan). Upon review of the foregoing, the Court considers whether the United States is entitled to judgment as a matter of law.

## Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the rule, "[a] fact is material if it 'could alter the outcome,' while a dispute is genuine 'if evidence exists from which a rational person could conclude that the position of the

---

[5] The amount is calculated as follows: $398.13 (monthly net income from Schedules) + $600 (increase in Mrs. Rubash's income) + $180 (decrease in mortgage) + $324.83 (real estate taxes identified in error) = $1,502.96 – $417 (decrease in income from Lee Industries) - $50 (change in IRS payment plan) = $1,035.96. Notably, without any supporting evidence, Mr. Rubash asserts in his supplemental brief that he experienced an increase in an expense. He contends that his payment plan with the IRS is $250. *See* Doc. No. 76, at 5. *Even if* the Court were to consider this allegation without any evidentiary support, the $100 increase in the payment plan ultimately would not lead to a different outcome.

[6] Mr. Rubash denies the United States' allegation that, "[a]s of April 30, 2019, the outstanding balance on Plaintiff's current educational loan was $230,534.05…." *See* Doc. No. 61, at ¶5 (denying). In support of its allegation, the United States cites to the Declaration of Chad Keller. *See* Doc. No. 49, at ¶5; Exhibit B. In response, Mr. Rubash cites to information provided in an email dated March 2, 2018, from a previous loan servicer. *See* Doc. No. 61, at ¶5. The email appears to include a screenshot of loan information from which Mr. Rubash concludes that the total amount owed, at least at that time, was $195,807.83. *See* Exhibit 8. There has been no objection to the form of the exhibit. Notably, there is no statement regarding what Mr. Rubash believes the total indebtedness to be as of April 30, 2019, over one year later. Accordingly, the extent of the dispute is unknown. Despite these variations, the total amount of indebtedness does not change the outcome of this Court's analysis and therefore does not constitute a genuine dispute as to a material fact that would preclude summary judgment.

6

person with the burden of proof on the disputed issue is correct.'" *Reagan v. Educ. Credit Mgmt. Corp.* (*In re Reagan*), 587 B.R. 296, 299 (Bankr.W.D.Pa. 2018) (citing *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n.1 (3d Cir. 1995)). The party moving for summary judgment bears the initial burden of informing the court of the basis for the relief requested and identifying materials which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, "the non-moving party must respond with contrary evidence and do more than raise some metaphysical doubt as to material facts…." *Goforth v. United States Dep't of Educ.* (*In re Goforth*), 466 B.R. 328, 334 (Bankr.W.D.Pa. 2012) (citing *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998)). Put differently, the non-moving party must respond with specific facts demonstrating a need for trial and provide concrete evidence in support of the essential elements of its claim. *See Reagan*, 587 B.R. at 299-300 (citing *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996)). With this standard in mind, the Court considers the Motion for Summary Judgment.

Analysis

Pursuant to 11 U.S.C. §523(a)(8), Mr. Rubash's student loan debt is non-dischargeable unless excepting such debt from discharge would impose an undue hardship on Mr. Rubash and his dependents.[7] To determine what constitutes "undue hardship," the Third Circuit adopted the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987):

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

---

[7] The parties do not dispute that the educational loan debt at issue in this proceeding is the type of debt addressed by 11 U.S.C. §523(a)(8). Therefore, the issue before the Court is whether the exception from discharge would impose an undue hardship.

7

> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and
> (3) that the debtor has made good faith efforts to repay the loans.

*Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 304-06 (3d Cir. 1995). To obtain discharge of the debt, the burden is on the debtor to establish all three elements of the test. *Id.* at 306. If one element is not satisfied, the inquiry ends. *Id.* "Equitable concerns or other extraneous factors" outside of this framework are not to be considered. *Id.*

Although the United States does not have the burden of proof on the underlying claim, the United States, as the movant, has the initial burden to show the absence of a genuine dispute as to any material fact. *See Miller v. Sallie Mae, Inc.* (*In re Miller*), 409 B.R. 299, 310 (Bankr.E.D.Pa. 2009) (citing *Newman v. Educ. Credit Mgmt. Corp.* (*In re Newman*), 304 B.R. 188, 193 (Bankr.E.D.Pa. 2002)). To prevail, the United States must demonstrate "an absence of evidence to create a triable issue regarding at least one necessary element of [Mr. Rubash's] claim of undue hardship, or alternatively, that [Mr. Rubash] will be unable to meet [his] burden of proof on one or more elements of the *Brunner* test at trial." *Miller*, 409 B.R. at 310.

The Court begins by addressing whether Mr. Rubash cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans. Under the first prong of the test, it is not sufficient for a debtor to show that repayment of the educational loan debt will result in tight finances, and a court may assess whether loan payments can be made if a debtor engages in some "short-term belt tightening." *See Goforth*, 466 B.R. at 335 (citing *Faish*, 72 F.3d at 306). While consideration of a debtor's present income and expenses is required, a court may also consider whether it would be unconscionable to require a debtor to reduce expenses or take steps to earn additional income. *See Goforth*, 466 B.R. at 336 (citing *Faish*, 72 F.3d at 307). "Income and expenses should not be regarded as unalterable."

*Goforth,* 466 B.R. at 336. By applying the foregoing standard, this case begins and ends with the first prong of the *Brunner* test.

Although Mr. Rubash cites to certain considerations to assist the Court in determining what constitutes a minimal standard of living,[8] there is no evidence that Mr. Rubash is currently unable to maintain a minimal standard of living. Significantly, Mr. Rubash's Schedules I and J and his deposition testimony demonstrate that the household income exceeds expenses. Notwithstanding the foregoing, Mr. Rubash submits certain bank statements as an exhibit without referencing them in support of any response to the United States' statement of material facts or his own statement of additional material facts. *See* Doc. No. 61; Exhibit 10. Rather, the bank statements are referenced within his brief in support of the assertion that Mr. Rubash must draw from his checking reserve line of credit to meet basic expenses. *See* Doc. No. 62, at 8.[9] The mere citation to over two hundred pages of bank statements representing transactions made on multiple accounts is

---

[8]   *See* Doc. No. 62, at 6 (citing to *Reagan*, 587 B.R. 296, and identifying the following considerations: (1) Shelter that is furnished, clean, free of pests and climate-regulated heating and cooling; (2) Basic utilities such as electricity, water, gas, and telephone; (3) Transportation or vehicles (and the ability to service and insure those vehicles); (4) Life insurance and health insurance (or the ability to pay for medical and dental expenses); and (5) Modest recreation).

[9]   This is not the proper procedure pursuant to this Court's Local Rules. The party opposing summary judgment is directed to file "[a] separately filed statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (A) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (B) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record…; and (C) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment, with appropriate reference to the record…." *See* W.PA.LBR 7056-1(b)(1). The documents referenced are to be included in an appendix. *See* W.PA.LBR. 7056-1(b)(3). To the contrary, a party's brief in opposition is intended to address applicable law and why there are genuine issues of material fact to be tried. *See* W.PA.LBR 7056-1(b)(2). The brief is not the place to raise new statements of fact.

insufficient to demonstrate that the *basic* expenses of the Rubash household exceed income.[10] In opposing the motion, Mr. Rubash must "do more than raise some metaphysical doubt as to material facts." *See Goforth*, 466 B.R at 334. If Mr. Rubash experienced a significant expense since the time his petition was filed, it was incumbent upon him to advise of the change. *See id.* at 335. He did not do so.

To the extent Mr. Rubash asserts that making payments on his student loan debt would force him below a minimal standard of living, that bare assertion is unsupported and inconsistent with the Schedules and deposition testimony cited by the United States. No contrary evidence has been submitted by Mr. Rubash to establish a genuine dispute as to a material fact under this prong of the *Brunner* test. As clarified at Mr. Rubash's deposition, with an increase to Mrs. Rubash's income[11] and a decrease in certain expenses, the actual monthly net income of the household exceeds $1,000. Mr. Rubash admits that he has been offered a payment plan requiring monthly

---

[10] Even construed in the light most favorable to Mr. Rubash, it is insufficient to simply show tight finances, and income and expenses are not unalterable. In response to the United States' citation to Mr. Rubash's Schedules and deposition testimony regarding his household income and expenses, Mr. Rubash did not respond with specific facts demonstrating a decrease in income or increase in a necessary expense to create a genuine dispute of material fact with respect to his ability to maintain a minimal standard of living. If the bank statements might reveal an increase in a necessary expense or decrease in income that was not identified by Mr. Rubash, it is not for the Court to search, compare, and discover the information. "Judges are not like pigs, hunting for truffles buried in the record." *Jacobsen v. Hartford Ins. Co. Flood & Home*, 799 F.App'x 153, 156 (3d Cir. 2020) (citing *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)). Further, it cannot be plainly ascertained whether all household income is accounted for in the bank statements or if the multiple checks made payable to cash were spent on necessary expenses. It is not the Court's burden to reconcile the statements from multiple accounts with each other to determine if all income is reflected and how that income was spent.

[11] Mr. Rubash does not contest that Mrs. Rubash's income should be considered in this analysis, and case law supports the consideration of Mrs. Rubash's income. *See Doernte v. Educ. Credit Mgmt. Corp. (In re Doernte)*, No. 15-2080-JAD, 2017 WL 2312226, at *9-*10, 2017 Bankr. LEXIS 1407, at *23 (Bankr.W.D.Pa. May 25, 2017); *Miller,* 409 B.R. at 313.

payments in the amount of approximately $838 toward the student loan debt.[12] These undisputed facts demonstrate that Mr. Rubash can afford the monthly payment without requiring him to reduce current expenses or seek opportunities for additional income.

Furthermore, the Court finds there is room for belt-tightening with respect to Mr. Rubash's expenses. Mr. Rubash provides financial support for his adult children of approximately $400 per month.[13] Without citation to any authority, Mr. Rubash contends that "[i]t is unconscionable to tell parents they cannot assist their young-adult children, simply because they have no legal obligation to do so." *See* Doc. No. 62, at 9. Accordingly, Mr. Rubash appears to concede he is under no *legal obligation* to make payments for the benefit of his adult children; rather, the additional expense is a *choice*. While Mr. Rubash, understandably, would prefer to make payments for the benefit of his

---

[12] The Court finds it appropriate to consider the monthly payment amount of $838 in this analysis. First, as set forth in *Goforth*, the Court cannot ignore when a debtor has the power to substantially reduce the monthly loan expense. 466 B.R. at 337. *See also Doernte*, 2017 WL 2312226, at *7 & n.5, 2017 Bankr. LEXIS 1407, at *16 & n.5. Second, while there may be higher and lower monthly payment options available to Mr. Rubash, he has consistently used the approximate amount of $838 as the monthly payment to be considered in the undue hardship analysis. *See* Doc. No. 62, at 4, 6, 8, 9. In fact, Mr. Rubash includes as an exhibit a monthly bill dated June 3, 2019, with a current payment due of $837.50. *See* Exhibit 9. Finally, Mr. Rubash fails to argue that any alternative monthly payment amount should be considered by the Court.

[13] In addition, although it is a less significant impact on reduction of expenses, Mr. Rubash also appears to consider the adult children when estimating the monthly cost of food for the household. *See* Doc. No. 62, at 8; Exhibit 11, at 22:25-23:18. On Schedule J, food and housekeeping supplies are listed as a monthly expense of $1,000. *See* Exhibit D, at 49. Notably, in his brief, Mr. Rubash provides the following IRS guidelines for comparison: "The IRS allowance for food for two (2) people is $685. The IRS allowance for housekeeping supplies for two (2) people is $75. The Plaintiff's $1,000 a month for two (2) people (which is often more, given that he and his wife have family who are in and out of the home) is not unreasonable under the IRS guidelines." *See* Doc. No. 62, at 8. Although downplayed by Mr. Rubash, the difference between the expense on Schedule J and the IRS guidelines provided by Mr. Rubash is not insignificant and equates to $240 per month.

children, that is not the relevant inquiry.[14] Further, Mr. Rubash's argument does not find support in case law within this Circuit. *See Brightful v. Pa. Higher Educ. Assistance Agency* (*In re Brightful*), 267 F.3d 324, 330 (3d Cir. 2001) (observing legal dependency concludes when a child reaches the age of majority)*; Goforth,* 466 B.R. at 336-37 (finding no applicable authority in support of debtors' argument of a legal duty to support adult daughter).[15] Accordingly, the actual monthly net income of the household could be increased by an additional $400, resulting in the actual monthly net income of the household exceeding $1,400 per month. The amount is more than sufficient to permit student loan payments of approximately $838.[16] The Court need not determine whether additional expenses cited by the United States could be further reduced.[17] Therefore, the

---

[14] Notably, in *Faish*, the debtor was concerned regarding the quality of her neighborhood and school district where she was raising her eleven-year-old son, and she was saving money for a car and an apartment in a better area. *See Faish*, 72 F.3d at 300. Nonetheless, the Third Circuit found "full nondischargeability is especially appropriate here because, in essence, Faish was asking the bankruptcy court to allow a discharge of her student-loan obligation so that she could devote the money (which could otherwise have been earmarked for student-loan payments) to savings for the purchase of a new car and to settle into a new apartment." *See id.* at 307.

[15] Mr. Rubash cites to *Sperazza v. Educ. Credit Mgmt. Corp.* (*In re Sperazza*), 366 B.R. 397 (Bankr.E.D.Pa. 2007), in an attempt to point out the "absurdity" of the position taken by the United States. *See* Doc. No. 62, at 9 n.2. The Court disagrees with Mr. Rubash's analysis. In *Sperazza*, there was no indication that the parents of the debtor were supporting their son to the detriment of their own creditors. The analysis in *Sperazza* is consistent with the conclusion that a debtor cannot elect to be a benefactor to his adult children while also using that expense as a reason he cannot pay his own obligations.

[16] To the extent Mr. Rubash speculates that, in the future, his expenses will increase, the first prong of the *Brunner* test concerns a debtor's *current* financial status as opposed to future speculation. *See Doernte*, 2017 WL 2312226, at *8 n.6, 2017 Bankr. LEXIS 1407, at *21 n.6.

[17] Notably, the bank statements produced by Mr. Rubash do raise some questions as to whether further belt-tightening may be possible. The bank statements show routine purchases at Starbucks and Smoker Friendly. *See* Exhibit 10. As an example of these types of expenses, from May 26, 2018 through June 26, 2018, the debits identified as Starbucks purchases total $74.93. *See* Exhibit 10, at RUBASH 00276-00280 (freestyle checking account statement ending 6/26/18).

Court finds no genuine dispute as to any material fact with respect to the first prong of the *Brunner* test. As one element cannot be satisfied, the Court's inquiry ends.[18]

Although the Court need not address the additional prongs of the *Brunner* standard, it is worth noting the difficulty Mr. Rubash faces with respect to these prongs as well. The second prong of the test looks beyond whether a debtor can currently maintain a minimal standard of living if forced to repay the loans. The second prong is described as a "demanding requirement" as a debtor must demonstrate a total incapacity in the future to pay the debt for reasons outside of the debtor's control. *See Brightful*, 267 F.3d at 328 (citing *Faish*, 72 F.3d at 307). Dischargeability is based on a "certainty of hopelessness" as opposed to a present inability. *Brightful*, 267 F.3d at 328 (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.* (*In re Brunner*), 46 B.R. 752, 755 (S.D.N.Y. 1985)).[19]

With respect to the second prong at the summary judgment stage, the United States cites to Mr. Rubash's current ability to pay and appears to rely upon the absence of evidence to create a triable issue with respect to the future ability to pay. In response, Mr. Rubash produced evidence

---

[18] In addressing the first prong of the *Brunner* test, Mr. Rubash cites to *Naylor v. N.J. Higher Educ. Student Assistance Auth.* (*In re Naylor*) 348 B.R. 680 (Bankr.W.D.Pa. 2006). *See* Doc. No. 62, at 10. The facts in *Naylor*, however, are distinguishable. The debtor in that case was 71 years old, retired, partially disabled, and unable to pursue future employment; further, the debtor's income roughly equaled expenses. *See Naylor*, 348 B.R. at 682-83. In response to the argument that the debtor may have the ability to reduce his monthly vehicle expense, which the court had determined to be a modest amount, the court observed that the debtor and his spouse, "by virtue of their instant bankruptcy filing as well as their age and retirement status, lack sufficient credit with which to borrow the necessary funds to obtain such cheaper vehicle…." *Id.* at 683. These do not reflect the circumstances before the Court in the present case.

[19] Citing to *Rosenberg v. N.Y. State Higher Educ. Servs. Corp.* (*In re Rosenberg*), 610 B.R. 454 (Bankr.S.D.N.Y. 2020), Mr. Rubash contends that the Court should disregard the "certainty of hopelessness" test. *See* Doc. No. 76, at 3. Notably, however, the "certainty of hopelessness" standard is cited approvingly by the Third Circuit in *Brightful*. 267 F.3d at 328. Moreover, to the extent Mr. Rubash relies upon the *Rosenberg* case with respect to the first prong of the *Brunner* test, the facts are entirely distinguishable. In *Rosenberg*, the debtor's Schedules I and J demonstrated that the debtor's monthly income was *negative* (-$1,548.74), and there appeared to have been no errors discovered in his Schedules. *Rosenberg*, 610 B.R. at 460.

of his past failures and future inability to obtain *more favorable* employment opportunities as a result of his depression. However, as set forth by the Third Circuit in *Brightful*, Mr. Rubash must show how his depression impairs his ability be gainfully employed. *See* 267 F.3d at 330. Despite his battle with depression, Mr. Rubash is able to maintain employment and function at work. While Dr. McCue's evaluation of Mr. Rubash certainly raises doubts as to his ability to obtain more *suitable* employment and overcome his *under*employment, no assessment is made regarding Mr. Rubash's ability to continue to function in the position he has maintained for the past eighteen years. If anything, Mr. Rubash demonstrated an inability to obtain more favorable employment in his chosen field; however, the government is not an insurer of educational value. *See Brightful*, 267 F.3d at 331 (citing *Faish*, 72 F.3d at 305). Although Dr. McCue's report uses the terms "hardship" and "without hope," these are determinations to be made by the Court within the context of applicable case law for the purpose of determining dischargeability of debt.[20] While the Court does not minimize the extent of Mr. Rubash's struggles, the question under the second prong of *Brunner* is not answered solely by whether Mr. Rubash's clinical depression will persist. The relevant inquiry is whether there is a future incapacity to pay the debt.

With respect to the third prong of *Brunner* regarding good faith efforts to repay the loans, Mr. Rubash demonstrated his attempts over the years to address the educational loan debt by making some voluntary payments, consolidating debt, obtaining deferments and forbearances, and making inquiries into monthly payment programs. While not determinative, "[a] debtor's effort to seek out options that make the debt repayment obligation less onerous is an 'important component'

---

[20] Notably, based on Dr. McCue's assessment, the United States is placed in the unenviable position of responding to the allegation that the debt itself may be the cause of Mr. Rubash's depression. Accordingly, discharge of the debt may be the cure enabling Mr. Rubash to be free of the hindrance to more favorable employment and higher income, though to no benefit to the United States. Even assuming the educational debt is the cause of Mr. Rubash's depression, Mr. Rubash has maintained steady, full-time employment notwithstanding his ongoing struggle with depression.

14

of the good faith inquiry." *See Goforth*, 466 B.R. at 340 (citing *Fabrizio v. U.S. Dep't of Educ. Borrower Servs. Dep't Direct Loans* (*In re Fabrizio*), 369 B.R. 238, 245 (Bankr.W.D.Pa. 2007)). As set forth more fully above, the income and expenses of the Rubash household would permit payments of $838 per month. Nonetheless, at his deposition, Mr. Rubash testified to a present inability to pay even $600 per month toward the educational loan debt. *See* Exhibit 11, at 32:25-33:3. In his amended complaint, he avers "[t]here are simply no funds available to allow for *any* repayment program for the student loan debts." *See* Exhibit A, ¶11 (emphasis added). Meanwhile, Mr. Rubash concedes that each month $400 is spent for the benefit of his adult children. These facts are quite troubling and undermine a finding of good faith. Nonetheless, the Court need not resolve the issue on this record. As there is no genuine dispute as to any material fact regarding the first prong of the *Brunner* test, the analysis is concluded.

## Conclusion

Based on the foregoing, the United States met its initial burden, and Mr. Rubash failed to respond with evidence demonstrating the existence of a genuine dispute as to any material fact with respect to the first prong of the *Brunner* test. As Mr. Rubash must satisfy all three prongs of the *Brunner* test in order to obtain discharge of the educational loan debt, this failure is fatal to his request. The United States is entitled to judgment as matter of law, and the Motion for Summary Judgment is granted. An Order will be entered consistent with this Memorandum Opinion.

Date: May 19, 2020                         /s/ Carlota M. Böhm
                                                    Carlota M. Böhm
                                                    Chief United States Bankruptcy Judge

**MAIL TO:**                                                           FILED
Office of the United States Trustee              5/19/20 8:56 am
Kathryn Harrison, Esq.                             CLERK
Jill Locnikar, Esq.                                       U.S. BANKRUPTCY
                                                                  COURT - WDPA